MDR

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Vaughn Gwen, | No.   CV 21-02211-PHX-JAT (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Yavapai County Jail Medical Providers, et al., | |
| Defendants. | |

Pro se Plaintiff Gerald Vaughn Gwen is confined in CoreCivic's Red Rock Correctional Center and is proceeding in forma pauperis. After the Court dismissed Plaintiff's civil rights Complaint because he had failed to state a claim, Plaintiff filed a First Amended Complaint. The Court dismissed the First Amended Complaint because Plaintiff had again failed to state a claim and gave Plaintiff an opportunity to file a second amended complaint that cured the deficiencies the Court identified.

On June 13, 2022, Plaintiff filed a Second Amended Complaint (Doc. 15). The Court will order Defendant Becky P. to answer the portion of Count One regarding her July 2020 response to Plaintiff's July 2020 grievance and her related failure to provide medical care, order Defendant Caholico to answer the portion of Count One regarding his November 2020 response to Plaintiff's medical concerns regarding his weight and coronavirus-like symptoms, and dismiss the remaining claims and Defendants without prejudice.

TERMPSREF

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

## II. Second Amended Complaint

In his two-count Second Amended Complaint, Plaintiff sues Defendants Yavapai County Jail Medical Providers, Dr. Leon Caholico, Health Services Administrator Becky P., and Jail Commander Captain Newnun. Plaintiff seeks declaratory relief and monetary damages.

In **Count One**, Plaintiff alleges a violation of his Eighth Amendment rights regarding his medical care. He contends Defendants Caholico, Becky P., and Newnun, acting "pursuant to a policy, custom or practice," were deliberately indifferent to Plaintiff's serious medical needs when they "refused to provide reasonably necessary medical care or medical treatment or access to medical services." (Doc. 15 at 3.)[1] He claims Defendants had "actual knowledge of a subjectively serious medical condition to Plaintiff['s] spine diagnosed by an independent phys[ic]ian [and] were indifferent to the impending harm, easily preventable." (*Id*.)

Specifically, Plaintiff alleges that on July 17, 2020, he told "the medical services provider" that he was concerned about his weight loss and that he was experiencing severe pain in his neck, shoulder, and back. (*Id*. at 5.) Four days later, Plaintiff met with a medical counselor, not a physician, and discussed his weight loss, neck injury, and inability to sleep because of his pain. (*Id*.) The medical counselor stated that he would discuss Plaintiff's problems with the "appropriate parties" and would respond within a week. (*Id*.)

Plaintiff contends that on July 27, 2020, Defendant Newnun responded to an "Appeal of Grievance," that allegedly gave him "constructive notice of practices that violated Plaintiff[']s constitutional rights." (*Id*. at 6.) He claims Defendant Newnun "failed to act on the knowledge provided to him" and, "by denying Plaintiff's appeal," acquiesced to the deprivation of Plaintiff's "right to be free from deliberate indifference." (*Id*.)

. . . .

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

Plaintiff contends that after a week with no response from the medical counselor, he filed a grievance on July 28, 2020. (*Id*. at 5.) That same day, Defendant Becky P. responded to the grievance, which allegedly gave her "constru[c]tive notice of a denial of medical care or medical treatment." (*Id*.) Plaintiff alleges Defendant Becky P. "refused Plaintiff medical care for his serious medical needs" and "denied Plaintiff's claims that he was not receiving medical care for his neck injury or other concerns." (*Id*. at 5-6.) He contends this was a "fail[ure] to act" and "demonstrate[ed] deliberate indifference to Plaintiff['s] serious medical needs." (*Id*. at 6.)

Next, Plaintiff contends that on November 8, 2020, he informed medical providers that he was experiencing coronavirus-like symptoms, including shortness of breath, nausea, headaches, dry mouth, and a loss of appetite. (*Id.* at 7.) On November 8 and 18, he notified several members of the jail's operations staff and several members of the nursing staff that he was experiencing coronavirus-like symptoms, was unable to eat, and would like to see a physician. (*Id*.) He claims "[a]ll parties" indicated they would notify the medical doctor. (*Id*.)

Plaintiff asserts that on November 15, 2020, he appealed to the duty nurse, explaining that he was suffering from coronavirus-like symptoms, had not eaten in ten days, and had not received any medical care, despite repeated requests. (*Id*.) The nurse sent an email to Defendant Becky P., explaining that Plaintiff "had not been rec[ei]ving responses to his serious medical needs." (*Id*.) As a result of the nurse's efforts, Plaintiff was scheduled to see Defendant Caholico on November 20, twelve days after he first reported his symptoms. (*Id*. at 8.)

Plaintiff contends that when he met with Defendant Caholico on November 20, 2020, he expressed his concern that he had lost ten pounds since October 5, had been unable to eat any food for the last twelve days, and was experiencing shortness of breath, nausea, headaches, a loss of appetite, and a loss of taste. (*Id.*) He also told Defendant Caholico that he was experiencing severe pain in his neck, shoulder, and back; numbness in his right hand; and an inability to sleep due to the severe pain. (*Id.*) Plaintiff claims Defendant

Caholico did not perform a physical evaluation "in light of Plaintiff exhibiting coronavirus s[y]mpto[m]s," completely disregarded those symptoms, and "refused to do anything about Plaintiff[']s weigh[t] loss." (*Id*.) He alleges, however, that Defendant Caholico scheduled an examination by a radiologist for Plaintiff's neck injury. (*Id*. at 9.)

Plaintiff allege that on November 25, 2020, he "again attempted to secure medical care for a serious medical need" and "was denied after exhausting first complaint, first appeal and a second appeal." (*Id*. at 6.) He also contends "[o]ther grievances were filed [that] raised the same issue and were all denied." (*Id*.)

Plaintiff asserts that on January 25, 2021, a nurse delivered a message from Defendant Caholico stating that Plaintiff suffered from a "degenerative ailment to his spine" and that he should let Defendant Caholico know if he wanted pain medication. (*Id*. at 9.) Plaintiff contends Defendant Caholico "failed to act upon his knowledge of a serious medical need[], even upon conclusive dia[g]nos[i]s from an independent source." (*Id*.) He also claims Defendant Caholico failed to act after being informed of Plaintiff's coronavirus symptoms and "did nothing to protect Plaintiff from impending harm, easily preventable." (*Id*.)

Plaintiff also contends that he filed six consecutive grievances on January 22, 2021, "in a last attempt to secure his right to medical care or medical treatment for his neck injury, among other things, and was denied such medical care" by Defendants Caholico, Becky P., and Newnun. (*Id*.)

In **Count Two**, Plaintiff raises a failure-to-protect claim under the Eighth and Fourteenth Amendments. He claims Defendants Yavapai County Jail Medical Providers, Becky P., and Newnun were deliberately indifferent to Plaintiff's health and safety because "they failed to take reasonable measures to protect Plaintiff from unreasonable threat and e[x]posure to infectious or contag[i]ous d[is]ease known to them to be an immediate threat to Plaintiff's health and safety." (*Id*. at 4.) Plaintiff asserts that the Centers for Disease Control (CDC) have determined that tuberculosis, staphylococcus, and coronavirus are "highly contagious[,] requiring distance[,] and capable of causing severe medical

1    complications, including death, if not timely diagnosed and treated." (*Id.*) He contends
2    Defendants "did nothing to avoid placing inmates with known illnesses, potentially
3    dangerous to Plaintiff's health, in the same confined space" and were deliberately
4    indifferent to Plaintiff's medical needs resulting from their failure to protect him. (*Id.*)

5        Plaintiff alleges he was housed in a small, confined space with an inmate who had
6    tested positive for tuberculosis, and medical providers were aware of this. (*Id.* at 10.) He
7    claims he was also housed in a small, confined space with a second inmate who had an
8    open wound. (*Id.*) Plaintiff contends medical providers were actively treating the wound
9    and "should have reasonably known[,] as [the inmate's] condition worsened[,] that it could
10   be dangerous to Plaintiff[']s health." (*Id.*) Plaintiff asserts the second inmate's infection
11   worsened, and Plaintiff complained to the duty officer that he was not safe. (*Id.*) Plaintiff
12   claims the officer "unreasonably decided" the entire dormitory should be confined to their
13   cells, which created further "exposure to harm" for Plaintiff, "who was "subjected to close
14   contact with the infected person." (*Id.*)

15       In addition, Plaintiff claims he was housed with an inmate who had only quarantined
16   for six days, which was four less that that recommended by the CDC. (*Id.*) Plaintiff alleges
17   the inmate had previously been housed in an adjacent cell where three inmates became ill
18   with the coronavirus. (*Id.* at 11.) He contends jail and medical providers knew that an
19   active case of coronavirus existed when "[the] decision was made to quarantine the entire
20   dormit[or]y." (*Id.*) Plaintiff alleges the jail staff, Defendant Newnun, and medical
21   providers "did nothing to protect Plaintiff, even after they were informed and had
22   knowledge of impending harm, easily preventable." (*Id.*)

23       Plaintiff contends Defendants "share individual liability" because they acted with
24   deliberate indifference and "shared a common goal of deprivation of a constitutional right
25   to be free from deliberate indifference." (*Id.*)
26   . . . .
27   . . . .
28   . . . .

**TERMPSREF**

- 6 -

In a **Claims for Relief** section,[2] Plaintiff contends Defendants' "failure . . . to act on their knowledge of a substantial risk of harm to Plaintiff violated his Eighth Amendment right to be free from deliberate indifference." (*Id*. at 12.) He alleges that as a result of Defendants' "failure to protect Plaintiff or provide reasonable safeguards from potentially dangerous infections or contag[i]ous d[is]ease, Plaintiff suffered serious physical and emotional injury." (*Id*.)

Plaintiff contends Defendant Caholico failed to act "when he knew that there existed an active outbreak of the coronavirus" in the unit where Plaintiff was housed and when he knew of a serious injury to Plaintiff's neck. (*Id*.) Plaintiff asserts he suffered the "unnecessary and wanton infliction of pain and the impending harm, easily preventable," and this constitutes deliberate indifference. (*Id*. at 12-13.)

Plaintiff claims Defendants Becky P. and Newnun failed to act "on their knowledge," were deliberately indifferent, and "demonstrated []reckless disregard to Plaintiff's constitutional rights," and their conduct deprived Plaintiff of medical care or treatment. (*Id*. at 13.) He asserts their refusal to provide reasonably necessary medical care and their "denial to deal with Plaintiff's problems[,] contributed to the current and ongoing unnecessary and wanton inflection of pain." (*Id*.) He contends this constitutes deliberate indifference to his serious medical needs. (*Id*.)

Plaintiff alleges Defendant Yavapai County Jail Medical Providers and Defendant Newnun failed to "ensure that safeguards were in place to guarantee all constitutional rights are in full force." (*Id*.) He also claims Defendants "have a policy of restricting, if not outright denying" medical care, medical treatment, or access to medical services, "when such care is too expensive or carries a burden to provide." (*Id*. at 14.) He contends Defendant's failure to take "necessary measures" to ensure he received "the needed

---

[2] In filing a "Claims for Relief" section, Plaintiff ignored the Court's instruction in the April 5, 2022 Order that, "**he must include his "claims for relief" in the relevant counts, not in a separate section**." (Emphasis in original.) Future failures to comply with the Court's orders may result in dismissal of this action. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

medical care or treatment, d[e]spite their knowledge of Plaintiff's serious medical needs," constitutes deliberate indifference. (*Id.*)

### III. Discussion of Second Amended Complaint

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### A. Defendant Yavapai County Medical Providers

Regarding Defendant Yavapai County Medical Providers, Plaintiff has simply made vague and conclusory allegations against a group of Defendants, without any factual specificity as to what any particular Defendant did or failed to do. This is insufficient. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Thus, the Court will dismiss without prejudice Defendant Yavapai County Medical Providers.

### B. Defendant Becky P.

Plaintiff asserts he spoke to a medical counselor in July 2020 about his loss of weight and inability to sleep because of severe pain in his neck, shoulder, and back, and the medical counselor stated that he would discuss these problems with the "appropriate parties" and respond within a week. When the medical counselor failed to respond,

Plaintiff filed a grievance. Plaintiff alleges that when Defendant Becky P. responded, she denied Plaintiff's claim that he was not receiving medical care for his neck injury and other issues, and refused to provide Plaintiff with medical care. Liberally construed, Plaintiff has stated a claim against Defendant Becky P. regarding her response to his July 2020 grievance. The Court will require Defendant Becky P. to answer this portion of Count One.

As to Plaintiff's November 2020 complaints regarding coronavirus-like symptoms, Plaintiff asserts that he was scheduled to see a doctor after a nurse sent an email to Defendant Becky P. explaining that Plaintiff was not receiving responses to his requests for medical care. Nothing about Defendant Becky P.'s conduct rises to the level of a constitutional violation. Thus, the Court will dismiss without prejudice Plaintiff's claim against Defendant Becky P. regarding his coronavirus-like symptoms.

### C.     Defendant Caholico

Plaintiff alleges he met with Defendant Caholico in November 2020 and expressed concern about his weight loss; inability to eat for the last twelve days; shortness of breath, nausea, headaches, loss of appetite, and loss of taste; numbness in his hand; severe pain in his neck, shoulder, and back; and inability to sleep due to the severe pain. Plaintiff contends Defendant Caholico scheduled an examination with a radiologist regarding Plaintiff's neck injury, but did not perform a physical evaluation, disregarded Plaintiff's coronavirus-like symptoms, and refused to do anything regarding Plaintiff's weight loss. Liberally construed, Plaintiff has stated a claim against Defendant Caholico regarding his response to Plaintiff's medical concerns regarding his weight and coronavirus-like symptoms. The Court will require Defendant Caholico to answer this portion of Count One.

Plaintiff also alleges Defendant Caholico failed to act after becoming aware that Plaintiff had a degenerative ailment to his spine. But Defendant Caholico told Plaintiff to let him know if Plaintiff wanted pain medication. Plaintiff does not allege that there was some other treatment for his ailment or that Defendant Caholico's response placed Plaintiff

at substantial risk of suffering serious harm. Plaintiff's allegations are insufficient to state a claim against Defendant Caholico regarding his response to Plaintiff's diagnosis of a degenerative ailment to his spine. Thus, the Court will dismiss without prejudice this portion of Count One.

Finally, Plaintiff alleges Defendant Caholico failed to act "when he knew that there existed an active outbreak of the coronavirus" in the unit where Plaintiff was housed. This vague and conclusory allegation is insufficient to state a claim against Defendant Caholico. Thus, the Court will dismiss without prejudice this portion of Plaintiff's Second Amended Complaint.

### D.     Defendant Newnun

Plaintiff contends that on July 27, 2020, Defendant Newnun responded to an "Appeal of Grievance," which gave him "constructive notice of practices that violated Plaintiff[']s constitutional rights." He claims Defendant Newnun "failed to act on the knowledge provided to him" and, "by denying Plaintiff's appeal," acquiesced to the deprivation of Plaintiff's "right to be free from deliberate indifference." Plaintiff does not identify the contents of his "Appeal of Grievance" or the "practices that violated Plaintiff[']s constitutional rights" about which Defendant Newnun allegedly had constructive notice. Nor is it clear what Plaintiff requested in his grievance or appeal, what Defendant Newnun stated in his denial of the appeal, how Defendant Newnun's failure to act placed Plaintiff at substantial risk of suffering serious harm, what Plaintiff believes Defendant Newnun should have done, or how Plaintiff was harmed. Absent more, Plaintiff's allegations are too vague and conclusory to state a claim against Defendant Newnun regarding his July 27, 2020 response to Plaintiff's grievance appeal. The Court, therefore, will dismiss without prejudice this portion of Count One.

### E.     January 2021 Grievances

In Count One, Plaintiff contends that he filed six consecutive grievances on January 22, 2021, "in a last attempt to secure his right to medical care or medical treatment for his neck injury, among other things, and was denied such medical care" by Defendants


Caholico, Becky P., and Newnun. As previously noted, it is insufficient to simply make vague and conclusory allegations against a group of Defendants, without any factual specificity as to what any particular Defendant did or failed to do. *See Marcilis*, 693 F.3d at 596. Thus, the Court will dismiss without prejudice this portion of Count One.

### F.     Failure to Protect

In addition to the fact that Plaintiff again makes conclusory allegations against a group of individuals without factual specificity as to what any particular Defendant did or failed to do, Plaintiff does not allege that suffered any injury from being housed with an inmate with tuberculosis or an inmate with an open wound. *See Brown v. Ellis*, 1999 WL 197222, *2 (7th Cir. 1999) ("Failure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment."). Similarly, because Plaintiff fails to identify when he was housed with the inmate who had only quarantined for six days, it is unclear whether this time period corresponded with Plaintiff's coronavirus-like symptoms in November 2020. Thus, the Court will dismiss without prejudice Count Two.

### G.     Policy, Custom, or Practice

Plaintiff contends Defendants Caholico, Becky P., and Newnun, were acting "pursuant to a policy, custom or practice." He also claims Defendants "have a policy of restricting, if not outright denying" medical care, medical treatment, or access to medical services, "when such care is too expensive or carries a burden to provide." But Plaintiff alleges nothing to suggest that he was denied care because it was too expensive or because it "carries a burden to provide." Thus, the Court will dismiss without prejudice this portion of Plaintiff's Second Amended Complaint.

## IV.    Warnings

### A.     Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

(2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.    Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Defendant Becky P. must answer the portion of Count One of the Second Amended Complaint regarding her July 2020 response to Plaintiff's July 2020 grievance and her related failure to provide medical care.

(2)    Defendant Caholico must answer the portion of Count One Second Amended Complaint regarding his November 2020 response to Plaintiff's medical concerns regarding his weight and coronavirus-like symptoms.

(3)    Defendants Yavapai County Jail Medical Providers and Newnun, Count Two, and those portions of the Second Amended Complaint for which the Court is not requiring an answer, are **dismissed**.

(4) The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. 15), this Order, and both summons and request for waiver forms for Defendants Caholico and Becky P.

(5) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(9) A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

. . . .

. . . .

TERMPSREF

       (a)    personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

       (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)    Defendants Caholico and Becky P must answer the relevant portions of the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 27th day of July, 2022.

James A. Teilborg
Senior United States District Judge

TERMPSREF